Todd M. Friedman (SBN 216752)
Adrian R. Bacon (SBN 280332)
Matthew R. Snyder (SBN 350907)
LAW OFFICES OF TODD M. FRIEDMAN, P.C.
21031 Ventura Blvd., Suite 340
Woodland Hills, CA 91364
Phone: 323-306-4234
Fax: 866-633-0228
tfriedman@toddflaw.com
abacon@toddflaw.com
msnyder@toddflaw.com
*Attorneys for Plaintiff and the Proposed Classes*

Christopher Gold, Esq.* pro hac vice forthcoming
Florida Bar No. 088733
GOLD LAW, PA
350 Lincoln Rd., 2nd Floor
Miami Beach, FL 33139
Tel: 561-789-4413
chris@chrisgoldlaw.com
*Counsel for Plaintiff and the Proposed Classes*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS DOROBIALA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CARD KINGDOM, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *et seq.***<br><br>**JURY TRIAL DEMANDED**<br><br>**ACTION SEEKING STATEWIDE OR NATIONWIDE RELIEF** |

Plaintiff Thomas Dorobiala ("Plaintiff"), individually and on behalf of all others similarly situated, brings this putative class action against Defendant Card Kingdom, Inc. ("Defendant") and, based upon personal knowledge as to Plaintiff and Plaintiff's own acts and experiences, and upon information and belief through the investigation of Plaintiff's counsel as to all other matters, Plaintiff alleges as follows:

**NATURE OF THE ACTION**

1.       This putative class action arises out of Defendant's violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*

2.       Through its enactment of the TCPA, Congress "targeted unwanted text messages (as well as unwanted phone messages)." *Drazen v. Pinto*, 74 F.4th 1336, 1343 n.5 (11th Cir. 2023).

3.       As alleged herein, Defendant violated the TCPA by (1) sending unsolicited automated text message solicitations to Plaintiff and the proposed Class (the "Class," defined below) without prior express written consent; (2) sending unsolicited text message solicitations to telephone number registered on the National Do Not Call Registry without prior express written consent; and (3) continuing to send text message solicitations to Plaintiff and Class members even after they had clearly requested to not receive further messages.

4.       Through this action, Plaintiff seeks injunctive relief to end Defendant's ongoing and future violations of the TCPA. Plaintiff also seeks an award of statutory damages to Plaintiff and the Class.

**JURISDICTION AND VENUE**

5.       This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

6.       This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

7.       This Court has personal jurisdiction over Defendant because this suit arises out of and relates to Defendant's contacts with this state in that Defendant initiated and directed the unlawful text messages at issue to Plaintiff in California.

8.       Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this suit occurred in this District.

**PARTIES**

9.      Plaintiff is a natural person and, at all relevant times, was a resident of Riverside County, California.

10.      Defendant is a Washington corporation with its principal place of business in Spokane, Washington.

**FACTUAL ALLEGATIONS**

11.      At all relevant times, Plaintiff was the subscriber of a cellular telephone number ending in 3214.

12.      Plaintiff uses this number for residential purposes.

13.      Plaintiff's number has been registered on the National Do Not Call Registry since approximately March 2, 2020.

14.      To promote the sale of its goods and services, Defendant engages in aggressive and intrusive unsolicited telemarketing by sending text message solicitations to consumers, without their prior express written consent, including to consumers whose telephone numbers are registered on the National Do Not Call Registry, and to consumers who requested to not receive further communications from Defendant.

15.      Beginning around August 2, 2024, Defendant, or its agents or other third parties directed and/or controlled by Defendant, or otherwise acting on Defendant's behalf, began bombarding Plaintiff with unsolicited text messages, as shown below.

CLASS ACTION COMPLAINT





CLASS ACTION COMPLAINT



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20



21    16.    As shown in the images above, Defendant sent numerous unsolicited text

22    messages to Plaintiff's telephone number from short code 44873, which upon information and

23    belief, is a number owned and/or controlled by Defendant. Defendant sent such text messages

24    without prior express written consent, and Defendant ignored numerous requests from Plaintiff

25    to not receive further messages. Defendant continued to harass Plaintiff with unwanted text

26    message solicitations despite numerous requests that it stop.

27    17.    Specifically, on August 2, 2024, Defendant sent an unsolicited text message

28    solicitation to Plaintiff promoting the sale of Defendant's goods and services.

CLASS ACTION COMPLAINT

18.     Plaintiff immediately responded with the word "Stop," which advised Defendant that Plaintiff did not wish to receive further messages from Defendant.

19.     In response to Plaintiff's unambiguous stop request, Defendant's automated system sent Plaintiff a message stating, "Sorry, this service is not available."

20.     Six days later, on August 8, 2024, Defendant sent Plaintiff another text message solicitation.

21.     Again, Plaintiff responded with the word "Stop," which advised Defendant that Plaintiff did not wish to receive further messages from Defendant.

22.     Once again, Defendant's automated system responded to Plaintiff's stop request with a message stating, "Sorry, this service is not available."

23.     In an attempt to make it clear to Defendant that Plaintiff did not wish to receive further messages, Plaintiff sent ***two consecutive*** stop requests to Defendant, in all capital letters: "STOP."

24.     Once again, Defendant's automated system responded to Plaintiff's stop requests with a message stating, "Sorry, this service is not available."

25.     The next day, on August 9, 2024, Defendant sent Plaintiff another text message solicitation.

26.     Four days later, on August 13, 2024, Plaintiff sent Defendant another seemingly futile request to opt-out request by responding to Defendant's text message with the word "Stop."

27.     Yet again, Defendant's automated system responded to Plaintiff's stop request with a message stating, "Sorry, this service is not available."

28.     Despite Plaintiff's numerous opt-out requests, Defendant continued to harass Plaintiff with unsolicited text messages on August 28, August 30, September 2, Sept 13, and September 27, 2024.

CLASS ACTION COMPLAINT

29.    Upon information and belief, the subject text messages Defendant sent to Plaintiff were transmitted using an automated system that calls phone numbers from a stored list using a random or sequential number generator to select those phone numbers.

30.    The following facts strongly suggest that Defendant used such automated technology to send the text messages at issue: (1) Plaintiff never provided Defendant with his phone number; (2) Plaintiff has no established business relationship with Defendant; (3) Defendant's text messages to Plaintiff were generic and obviously prewritten and, thus, were designed for *en masse* transmission; and (4) Defendant responded to Plaintiff's opt-out requests with the same automated text message stating, "Sorry, this service is not available."

31.    Defendant's text messages introduce an advertisement and constitute "telemarketing" under the TCPA because they were sent for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.

32.    Plaintiff has no established business relationship with Defendant.

33.    Plaintiff never provided Defendant with prior express written consent, or any consent, to receive the text messages at issue.

34.    Even if Plaintiff had consented to receive Defendant's automated text message solicitations, Plaintiff revoked any such purported consent when he texted back the word "Stop" on multiple occasions, which were all ignored by Defendant.

35.    Defendant's failure to honor Plaintiff's optout request strongly suggests that Defendant (1) does not have a written policy for maintaining an internal do not call list, as required by 47 U.S.C. § 64.1200(d)(1); (2) does not inform and train its personnel engaged in telemarketing on the existence and use of any internal do-not-call list, as required by Section 64.1200(d)(2); and (3) does not maintain a record of a consumer's request not to receive further calls, as required by Section 64.1200(d)(6).

36.    Defendant's unlawful text messages caused Plaintiff and the Class members concrete injury and actual damages, including inconvenience, invasion of privacy, aggravation, annoyance, intrusion upon seclusion, wasted time, and violation of their statutory privacy rights.

**CLASS ALLEGATIONS**

37.     Plaintiff brings this action individually and as a class action under Fed. R. Civ. P. 23 on behalf of the following proposed Classes:

**The Autodialer Class: All persons within the United States who, within the four years prior to the filing of this lawsuit and the date of class certification, (1) were sent a text message, (2) by or on behalf of Defendant, (3) to their cellular telephone number, (4) using the same equipment or type of equipment used to message Plaintiff, (5) and who did not give prior express written consent to receive such messages.**

**The DNC Registry Class: All persons in the United States who, within the four years prior to the filing of this lawsuit and the date of class certification, (1) were sent two or more text messages in any 12-month period (2) by or on behalf of Defendant (3) for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, (4) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days.**

**The Internal DNC Class: All persons within the United States who, within the four years prior to the filing of this lawsuit and the date of class certification, (1) made a request to not receive text messages from Defendant and (2) received two or more text messages in any 12-month period (3) by or on behalf of Defendant (4) for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services.**

38.     The Classes defined above are, at times, collectively referred to herein as the "Class."

39.     Plaintiff reserves the right to expand or narrow the definitions of the Classes following discovery.

40.     Excluded from the Class are Defendant and its employees and agents.

41.     ***Numerosity.*** The members of the Class are so numerous that individual joinder is impracticable. Plaintiff cannot know the exact number of Class members affected by Defendant's conduct, but based on the general nature of telemarketing campaigns, Plaintiff believes, and therefore alleges upon information and belief, that each Class includes, at a minimum, at least 40 members. The members of the Class are ascertainable because they are defined by reference to objective criteria. The exact number and identities of the Class members

are unknown at this time, but can be ascertained through discovery, and identification of the Class members is a matter capable of ministerial determination from Defendant's records.

42.    ***Common questions of law and fact predominate.*** There are numerous questions of law and fact common to the Classes that predominate over any questions affecting only individual members of the Classes, which will produce common answers that will drive resolution of the litigation, and they include, but are not limited to, the following:

    a.   Whether Defendant sent text messages to Plaintiff and the Class using an automated telephone dialing system within the meaning of the TCPA;

    b.   Whether Defendant sent text messages to Plaintiff and the Class while their telephone numbers were registered on the National Do Not Call registry;

    c.   Whether Defendant had the required processes an/or protocols in place to prevent sending text messages to persons who made a request to not receive further text messages;

    d.   Whether Defendant's text messages introduced an advertisement;

    e.   Whether Defendant's text messages constitute "telephone solicitations" under the TCPA;

    f.   Whether Defendant can meet its burden of showing that it had prior express written consent to send text messages to Plaintiff and the Class;

    g.   Whether Defendant acted knowingly or willfully;

    h.   Whether Defendant is liable to Plaintiff and the Class for statutory damages, and the amount of such damages; and

    i.   Whether Defendant should be enjoined from engaging in such conduct in the future.

43.    ***Typicality.*** Plaintiff's claims are typical of the claims of the members of the Class because they are based on the same factual and legal theories, Plaintiff and the Class members were harmed by Defendant in the same way, and Plaintiff is not subject to any unique defenses.

44.    ***Adequacy of Representation.*** Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action. Further, Plaintiff has no interests that are antagonistic to those of the members of the Class.

45.    ***Superiority.*** A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by members of the Class are likely in the millions of dollars, the amount of individual damages to each member of the Class resulting from Defendant's wrongful conduct does not warrant the expense of individual lawsuits. The likelihood of individual members of the Class prosecuting their own separate claims is remote and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

46.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.

## CAUSES OF ACTION

### COUNT 1
**Violation of the TCPA, 47 U.S.C. § 227(b)**
**(On Behalf of Plaintiff and the Autodialer Class)**

47.    Plaintiff re-alleges and incorporates by reference the allegations in paragraphs above as though fully set forth herein.

48.    It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

49.     It is a violation of the FCC regulations promulgated under and actionable through the TCPA to "initiate any telephone call (other than a call made for emergency purposes or is made with the prior express consent of the called party) using an automatic telephone dialing system...to any telephone number assigned to a . . . cellular telephone service." 47 C.F.R. § 64.1200(a)(1)(iii).

50.     Additionally, it is a violation of those FCC regulations to "[i]nitiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system . . . other than a call made with the prior express written consent of the called party or the prior express consent of the called party when the call is made." 47 C.F.R. § 64.1200(a)(2).

51.     As alleged herein, Defendant—and/or third parties directed and/or controlled by Defendant—transmitted text messages using an automatic telephone dialing system, including calls that introduce an advertisement or constitute telemarketing, to the cellular telephone numbers of Plaintiff and members of the Class.

52.     Defendant did not have prior express written consent to send automated text messages to Plaintiff and the other members of the Class.

53.     Defendant, therefore, violated Section 227(b)(1)(A)(iii) and Sections 64.1200(a)(1)(iii) and (a)(2), promulgated thereunder.

54.     As a result of Defendant's violations of the TCPA, Plaintiff and the other members of the Class were harmed.

55.     Plaintiff and the members of the Class are entitled to an injunction against Defendant's conduct. 47 U.S.C. § 227(b)(3)(A).

56.     Plaintiff and the Class are also entitled to an award of statutory damages of $500.00 for each text message that violates the TCPA. 47 U.S.C. § 227(b)(3)(B).

57.     Because Defendant knew that it did not have prior express written consent to send the subject text messages, and Defendant knew or should have known that it was using an

automatic telephone dialing system, Defendant's violations of the TCPA were willful or knowing.

58.    Under the TCPA, Plaintiff and the Class are entitled to an award of treble statutory damages of $1,500.00 for each willful or knowing violation of the TCPA. 47 U.S.C. § 227(b)(3)(C).

**COUNT 2**
**Violation of the TCPA, 47 U.S.C. § 227(c)**
**(On Behalf of Plaintiff and the DNC Registry Class)**

59.    Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above, except for the allegations in the preceding Count, as though fully set forth herein.

60.    The TCPA established a National Do Not Call Registry of phone numbers of consumers who object to receiving telephone solicitations. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014.

61.    The FCC's implementing regulation under the TCPA provides that "[n]o person or entity shall initiate any telephone solicitation to[] [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government." 47 C.F.R. § 64.1200(c)(2).

62.    A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of . . . property, goods, or services, which his transmitted to any person", but excludes a call or message "to any person with that person's prior express invitation or permission" and "to any person with whom the caller has an established business relationship." 47 C.F.R. § 64.1200(f)(15).

63.    A violation of Section 64.1200(c) is actionable through 47 U.S.C. § 227(c)(5), which provides a private right of action for any "person who has received more than one

- 13 -

telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [Section 227(c)]," which includes Section 64.1200(c). § 227(c).

64.    Defendant violated Section 64.1200(c) by initiating, or causing to be initiated on its behalf, more than one telephone solicitation in a 12-month period to Plaintiff and the members of the DNC Registry Class while their respective telephone numbers were registered on the National DNC Registry.

65.    As a result of Defendant's violations of the TCPA, Plaintiff and the other members of the Class were harmed.

66.    Plaintiff and the members of the Class are entitled to an injunction against Defendant's conduct. 47 U.S.C. § 227(c)(5)(A).

67.    Plaintiff and the Class are entitled to an award of statutory damages of $500.00 for each text messages that violates the TCPA. 47 U.S.C. § 227(c)(5)(B).

68.    Because Defendant knew or should have known that it was contacting numbers on the National DNC Registry without consent, Defendant's violations of the TCPA were willful or knowing.

69.    Plaintiff and the Class are entitled to an award of treble statutory damages of $1,500.00 for each willful or knowing violation of the TCPA. 47 U.S.C. § 227(c)(5)(C).

### COUNT 3
### Violation of the TCPA,
### 47 U.S.C. § 227(c)
### (On Behalf of Plaintiff and the Internal DNC Class)

70.    Plaintiff re-alleges and incorporates by reference the allegations in the paragraphs above, except for those under the preceding Counts, as though fully set forth herein.

71.    Under the FCC regulations promulgated under and actionable through the TCPA:

No person or entity shall **initiate any call for telemarketing purposes** to a residential telephone subscriber **unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity**. The procedures instituted must meet the following minimum standards:

- 14 -

**(1)    *Written policy*.** Persons or entities making…calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

**(2)    *Training of personnel*.** Personnel…engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

**(3)    *Recording, disclosure of do-not-call requests*.** If a person or entity making…any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not- call request. A person or entity making…any call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

*              *              *

**(6) *Maintenance of do-not-call lists*.** A person or entity making…any call for telemarketing purposes must maintain a record of a consumer's request not to receive further calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d) (emphasis added).

72.    The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [Section 227] may" bring a private action. 47 U.S.C. § 227(c)(5).

73.    Plaintiff and the Internal DNC Class members made requests to Defendant to not receive future text message solicitations.

- 15 -

74.    Defendant failed to honor Plaintiff's and the Internal DNC Class members' opt-out requests and sent two or more text messages within a 12-month period to Plaintiff and the Internal DNC Class members.

75.    Defendant's text messages to Plaintiff and the Internal DNC Class members constitute "telemarketing" under the TCPA because they were sent "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(13).

76.    Defendant's failure to honor Plaintiff's opt-out request strongly suggests that Defendant does not comply with requirements of Section 64.1200(d) to (1) maintain the required written policies; (2) provide adequate training to its personnel engaged in telemarketing; (3) maintain an internal do-not-call list; and (4) honoring opt-out requests.

77.    Because Defendant does not comply with the requirements of Section 64.1200(d), Defendant violated Section 64.1200(d) every time it "initiate[d] *any call* for telemarketing purposes," i.e., every text message it sent as part of its telemarketing campaign, regardless of whether any consumer texted back "stop" or otherwise made an optout request.

78.    As a result of Defendant's violations of the TCPA, Plaintiff and the other members of the Class were harmed.

79.    Plaintiff and the members of the Class are entitled to an injunction against Defendant's conduct. 47 U.S.C. § 227(c)(5)(A).

80.    Plaintiff and the Class are entitled to an award of statutory damages of $500.00 for each text message that violates the TCPA. 47 U.S.C. § 227(c)(5)(B).

81.    Because Defendant knew or should have known that it was initiating calls for telemarketing purposes without having the procedures in place to record and honor opt out requests that Section 64.1200(d) requires, Defendant's violations of the TCPA were willful or knowing.

82.    Plaintiff and the Class are entitled to an award of treble statutory damages of $1,500.00 for each willful or knowing violation of the TCPA. 47 U.S.C. § 227(c)(5)(C).

- 16 -

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the proposed Classes, prays for the following relief:

A.       An Order certifying the Classes, appointing Plaintiff as Class Representative, and Plaintiff's counsel as Class Counsel;

B.       An Order declaring that Defendant's actions alleged herein violate the TCPA;

C.       An award to Plaintiff and each member of the Classes of statutory damages of $500 for each violation of the TCPA, and an award of $1,500 for each violation found to be knowing or willful;

D.       An award to Plaintiff and the Classes of their reasonable attorneys' fees and the costs of this action;

E.       An injunction against Defendant's ongoing and future violations of law; and

F.       Such further and other relief as the Court deems just and necessary.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.


Dated: October 10, 2024                                        Respectfully submitted,


                                        THE LAW OFFICES OF TODD M. FRIEDMAN, P.C.

                                        By:  /s/ Todd M. Friedman
                                        TODD M .FRIEDMAN, ESQ.
                                        ATTORNEY FOR PLAINTIFF

CLASS ACTION COMPLAINT